UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

JEFFREY DIPPER,

                            Plaintiff,

 - against -                                                              05 Civ. 1935(CM)(LMS)

THE UNION LABOR LIFE
INSURANCE CO.,

                            Defendant.

----------------------------------------------------------------x

### DECISION AND ORDER GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Plaintiff Jeffrey Dipper was involved in an all-terrain vehicle accident in Gallatin, New York. Plaintiff and three friends were attempting to drive up an inclined road when the vehicle upended and rolled down the hill. Plaintiff suffered severe trauma to his face, and lost sight in both eyes as a result. Initial toxicology reports after the accident indicated that plaintiff had a blood-alcohol level of .127; the police accident report filed at the time indicated that the occupants had been drinking.

At the time of the accident, plaintiff was covered by an Accidental Death and Dismemberment Policy issued by defendant Union Labor Life Insurance Co. The policy provided full recovery ($50,000) in the event of loss of sight in both eyes. The policy contained an exception for any injury sustained because the insured was "intoxicated."

The plaintiff filed a claim for benefits pursuant to the policy. After investigation, the

claims examiner determined that the accident was caused by plaintiff's intoxication, and denied coverage. This denial was affirmed by subsequent review of the claim.

Plaintiff then brought a cause of action for state-law contract claims in New York Supreme Court. Defendant removed on the grounds of preemption of the state law claims by ERISA. Defendant now moves for summary judgment on the administrative record.

For the reasons stated below, defendant's motion is granted.

## II. Facts

A. Plaintiff's Accident

The events of the accident, according to the plaintiff, are as follows: plaintiff was injured on June 28, 2003 while riding an all-terrain vehicle (ATV) within the town of Gallatin in Columbia County, New York. The vehicle was a 2003 Polaris Ranger: the six-wheel, two-seat model, equipped with a roll bar top and rear cargo bed.[1] Plaintiff's Affidavit in Opp. to Summ. Judgment ("Pl's Aff."), Exhibit B.[2]

On the day in question, plaintiff drove the Polaris to a creek near to his home, where he met three friends, Todd Hermance, Mark Plass, and Steve Howay, at a nearby campsite. Pl's Aff.

---

[1] Certain reports in the administrative record indicate that plaintiff owned the six-wheel model. ULLICO 79 (referring to vehicle as a "six-wheel gator"). Plaintiff seems to assert that he owned the four-wheel model, although the affidavit is unclear. Pl's Aff. Exh. B. The fact is of little moment.

[2] Defendant objects to the inclusion of Plaintiff's affidavit and attached exhibits, as it was not included in the administrative record. I take the affidavit for what it is worth in relating the facts of the accident. I also note that these materials were not before the examiner and are not part of the record; nor were any other statements of the plaintiff or his companions submitted during the claims process.

¶ 3. After spending the afternoon by the creek, the four took the vehicle along a local power line road to a nearby lake, where they remained until evening. Pl.'s Aff. ¶ 4. The plaintiff drove the vehicle, with one person in the passenger seat and the other two, along with a cooler and metal chains and other equipment, in the rear bed. Pl's Aff. ¶ 5. The road to the lake was on a steep dowhnill grade.[3] Pl's Aff. ¶ 6.

Returning from the lake, plaintiff had to navigate the vehicle uphill along the incline. Id. Plaintiff allegedly drove no faster than five to six miles an hour. Id. As they reached the hill, he claims he heard one of his friends say, "It looks OK, go ahead." Id. While navigating the trail, the vehicle struck a "bump or rock" which caused the vehicle to stand up on its rear, and then flip over backwards. Pl's Aff. ¶ 7. Plaintiff was struck in the face by some part of the vehicle, and was thrown from the vehicle. Pl's Aff. ¶¶ 7, 9. Plaintiff passed out, and was taken by helicopter to St. Francis Hospital. Pl's Aff. ¶ 10.

Plaintiff denies being intoxicated or feeling any mental or physical impairment while driving. Pl's Aff. ¶ 8.

A police accident report by Deputy E. Feiser describes the accident. ULLICO 48. The report also states that, "It was found upon investigation that all occupants were drinking alcohol and contributed to the accident."Id. The report does not state how, or by whom, this conclusion was made. Id.

Plaintiff was treated by EMT and emergency room personnel at St. Francis for severe trauma to his face. ULLICO 75-77. He was also given a blood chemistry test, which found that

---

[3]The slope is described in the police report as a "steep rock outcropping in an access area to large power line towers." ULLICO 47.

plaintiff had a blood alcohol level of .127. ULLICO 137. He was subsequently transferred to Westchester Medical Center, where he was hospitalized for almost a month. ULLICO 66. On July 11, his right eye was surgically removed. Id. Plaintiff never regained vision in his left eye. He was discharged from Westchester Medical Center on July 24, 2004. Def's Exh. Q

B. The Policy and Claims Investigation

Plaintiff was at all times covered by a $50,000 Accidental Death and Dismemberment Policy issued by the Union Labor Life Insurance Company, Group Policy No. MP05035 ("The Policy"). Def's Exh. E. The Policy covers death or permanent injury, defined as "bodily injury caused by an accident, directly and independently of all other causes." ULLICO 35. The Policy covers loss of sight in both eyes at 100% of the policy value – $50,000. ULLICO 37. The Policy also states, under the heading "Exclusions," "This Certificate does not cover loss caused by or resulting from... an injury that occurs because the insured in intoxicated." ULLICO 38.

Plaintiff filed a claim on July 28, 2003, under the policy for loss of sight in both eyes. Def's Exh. F.

Defendant commenced an investigation of plaintiff's claims: seeking billing information from plaintiff's hospitals and ambulance services, hospital records from St. Francis and Westchester Medical Center, and the police report from the accident. Def's Exh G-M. Based on the documents submitted, defendant denied plaintiff's claims by letter dated May 19, 2004, based on the Policy exclusion for injury caused by intoxication. Def's Exh. Z.

Plaintiff retained counsel, who appealed the determination by letter dated September 29, 2004. Def's Exh. AA. Plaintiff denied the examiner's finding that he was intoxicated, or that the

accident occurred because of any such intoxication. Id. It does not appear that plaintiff submitted additional materials. Defendant re-evaluated the claims file, with their findings reviewed by Dr. Neal Lewin, an outside doctor. Def's Exh. OO-PP; and again rejected the plaintiff's claim. Def's Exh. QQ.

Plaintiff then filed suit in New York State Supreme Court under the common law of contracts and, implicitly, New York State Insurance Law, seeking payment under the Policy. Defendant removed this case to this Court on federal question grounds, claiming that the policy, and therefore plaintiff's suit, are governed by ERISA.. Plaintiff has since conceded that the policy in question is governed by ERISA. Letter from Robert J. Lackaye dated May 24, 2005.

### III. Discussion

A. Jurisdiction of this Court

Although not raised by the parties, this Court must first, *sua sponte*, address the question of jurisdiction. Plaintiff, in his complaint, pled only state law claims, with an amount in controversy under $75,000. Defendant has since removed the complaint to this Court under its federal question jurisdiction, based on the claim that plaintiff's complaint was governed by ERISA, and now moves for summary judgment on the merits. The parties, after initial disagreement, agree that the policy in question is indeed covered by ERISA. Plaintiff, however, has never amended his complaint to plead statutory causes of action under 29 U.S.C. § 1132(a)(1) (providing a civil cause of action to plan participants for unpaid benefits).

Regardless, this case was correctly removed and may be litigated on the merits. Under the rule set forth in Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 107 S. Ct. 1542

(1987), the regulatory scheme of ERISA preempts state law such that federal courts may *infer* a cause of action under 29 U.S.C. § 1132(a)(1) from a complaint only raising state law claims. Even where the complaint "purports to raise only state law claims, [it] is necessarily federal in character by virtue of the clearly manifested intent of Congress." Id. at 67. Therefore, resolution of this case on the merits, even absent an amended complaint, is proper.

B. Standard of Review

ERISA provides a federal cause of action for a covered insurance plan participant or beneficiary, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 28 U.S.C. § 1132 (2005). "A denial of benefits challenged under [ERISA] must be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948 (1989). "Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." Pagan v. Nynex Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (internal quotations omitted). The fiduciary has the burden of proving that a more deferential standard applies. See Kinstler v. First. Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999).

In this case, defendant does not argue for deferential review of the claims administrator's decision. Nor does the Certificate contain language reserving discretionary authority in the fiduciary to interpret the terms of the plan. Therefore, I review the examiner's findings of fact *de*

*novo*.

Review of an ERISA claim "is limited to the record in front of the claims administrator unless the District Court finds good cause to consider additional evidence." DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 67 (2d Cir. 1997). This good-cause requirement is not a *per se* rule permitting expansion of the record whenever a plan administrator or fiduciary acts as a claim examiner; rather, the claims procedure must be shown to be flawed or arbitrary. See Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 296-297 (2d Cir. 2004).

The Second Circuit has not indicated a single test that determines the reliability of a claims procedure; however, lack of notice to the claimant as to the basis for an initial rejection or denial of the claimant's right to submit new information in light of an initial rejection are significant factors in the analysis. See Juliano v. Health Maint. Org. of New Jersey, 221 F.3d 279, 289 (2d Cir. 2000); cf. Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125-126 (2d Cir. 2003) (finding process granting claimant, "ample time to submit additional materials" and involving some communication with one doctor sufficient to deny expansion of the record). Furthermore, the court may not consider materials that arose after the time that the record was closed, absent a showing of bad faith. See id., see also Salute v. Aetna Life Ins. Co., No. 04 Civ. 2035, 2005 WL 1962254 at *6 (E.D.N.Y. Aug. 9, 2005).

Plaintiff in this case seeks to expand the administrative record, based on the form of the denial letters sent by defendant. Regulations promulgated under 29 U.S.C. § 1133 require that, upon denial, a claimant be provided with:

> (3) A description of any additional material or information necessary for the claimant to perfect the claim, and an explanation of why such material or information is necessary; and,

>    (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 CFR § 2560-501(1)(f)(3)-(4). After reviewing the May 19, 2004, and January 14, 2005 letters (whose content is identical), I find plaintiff's argument unavailing. The letters clearly state the reasons for denial under the Certificate, and clearly solicit plaintiff to submit additional data. No additional information was required to perfect the claim under subpart (f)(3) because the record at the time was sufficient; however, plaintiff was invited to submit "appropriate and material statements" if he believed otherwise. Plaintiff was informed that the examiner's decision would be reconsidered upon the submission of such statements. Such notice is sufficient under § 1133. Furthermore, plaintiff, through counsel, did request and receive reconsideration. Therefore, I find the record and the underlying claims procedures to be more than adequate.

C. Review of the Record and Administrative Findings

Administrative review upheld the initial denial of plaintiff's benefits. The grounds for both denials were the terms of the Policy, which denies recovery for "any injury that occurs because the insured is intoxicated." Plaintiffs argument in opposition to defendant's motion for summary judgment hinges on the definition of the exclusionary terms: plaintiff claims that he was not "intoxicated" according to the common definition of the term, and that, even if he were, his intoxication was not the cause of the accident.

As a "matter of general insurance law, the insured has the burden of proving that a benefit is covered, while the insurer has the burden of proving that an exclusion applies." Mario v. P & C Food Markets, Inc., 313 F.3d 758, 765 (2d Cir. 2002).

*1. The Record Supports a Finding That Plaintiff Was Intoxicated.*

Plaintiff argues that the word "intoxicated," absent a definition in the Policy Certificate, must be given its common meaning, rather than given New York's legal standard for intoxication based on blood-alcohol content. See Brust v. Mut. of Omaha Ins. Co., 187 Misc.2d 780, 786-87, 724 N.Y.S.2d 254 (N.Y. Cty. 2000). In Brust, the state court held that the issue of whether plaintiff was 'intoxicated' – meaning "by reason of taking intoxicants, an individual does not have the normal use of his physical or mental faculties" – was a matter of fact to be determined at trial, rather than one for summary judgment. Id. Other everyday definitions of "intoxicated" do not significantly diverge from the Brust court's definition. See The Merriam-Webster Collegiate Dictionary (11th ed. 2003) ( "1:an abnormal state that is essentially a poisoning... 2a:the condition of being drunk: inebriation"); The New Oxford American Dictionary (2d ed. 2005) ("intoxicate:... [to cause] to lose control of their faculties of behavior").

Plaintiff in his affidavit (not submitted as part of the administrative record, see Note 2 supra) asserts, "I specifically deny that I was intoxicated.... I don't know any other way to prove that I was not intoxicated other than to deny it." Pl's Opp. ¶ 8. Plaintiff does not, apparently, deny that he had been drinking, although he implies that he may have been sedated with alcohol-based drugs by EMT personnel which elevated his BAC prior to testing – an inference I cannot reasonably make without substantiation. Pl's Aff. ¶ 10.

Even if plaintiff's statement had been before the examiner, a reasonable trier of fact could conclude, as I do, that the plaintiff's BAC of .127, the observation of the police officer's accident report form that the individuals on the ATV had been drinking, and the circumstances of the

accident outweigh the plaintiff's self-serving statement that he felt no negative effects of inebriation. While a mechanical comparison with New York's legal limit of .08 BAC is not determinative, it is nevertheless informative as to whether plaintiff's ability to operate an overloaded ATV was impaired. See N.Y. Vehicle & Traffic Law § 1192(2).[4]

2. *The Record Supports a Finding of a Causal Relationship Between the Plaintiff's Intoxication and the Accident.*

Plaintiff further argues that, even if plaintiff were intoxicated, there is insufficient evidence of causality between the accident and plaintiff's intoxication.

"Proximate cause has proven to be an elusive concept to define with any precision." Leiching v. Cons. R. Co., 901 F. Supp. 95, 98 (N.D.N.Y. 1995). The Second Restatement of Torts defines causation as the inquiry as to whether "the actor's conduct is a substantial factor in bringing about harm." Restatement (Second) of Torts § 435 (1965). The definition of "cause" in everyday English is not substantially different. See Random House Webster's College Dictionary (1992) ("(1) ...a thing that occurs so as to produce a specific result"); Cause: Merriam-Webster Online Dictionary, http://m-w.com/dictionary/cause ("something that brings about an effect or result" ).

In light of a valid finding of intoxication, the record (including numerous accident and hospital reports) more than supports an inference that the harm to the plaintiff was *caused* by the plaintiff's intoxication. Plaintiff managed to upend a heavy, six-wheel ATV while driving on a

---

[4]On the date of the accident, New York's legal limit under § 1192(2) was .10 BAC. The revised statute, lowering the level to .08, took effect two days later, on June 30, 2003.

path with no other traffic or distractions. A reasonable trier of fact could conclude that a sober individual would have seen and avoided the rock or bump that caused the accident; would have discredited the statements of his friends (who, if not intoxicated, had at least been drinking) that the road was clear; would have rebalanced the ATV before heading uphill so that several hundred pounds of weight were not concentrated on or behind the rear axle; or would have reconsidered the drive entirely. Where the record indicates that plaintiff's judgment and reflexes were impaired, and that an accident occurred that was the product of impaired judgment and reflexes, an inference that the one caused the other may be logically drawn.

I further note that plaintiff, although he contests the claims examiner's findings of fact, provides absolutely no evidence in support of his argument that the accident was based on another cause. Plaintiff has submitted no affidavits from his friends about that evening; no evidence that the Polaris ATV was prone to low-speed rolling and tipping; no evidence about abnormal conditions on the trail prior to the accident. Plaintiff's bare assertion that the trier of fact lacked sufficient information to make a determination must be weighed against the complete absence of any evidence that would cause the claims examiner to find otherwise.[5]

In sum, based on a *de novo* review of the record before me and given the defendant's burden of proof regarding the applicability of any exclusions to the Policy, I affirm the examiner's findings.

Defendant raises additional arguments in its motion, arguments not considered by the

---

[5]Plaintiff was, at the time of his claims appeal, represented by counsel; the same counsel who failed to plead claims under ERISA or consider that this claim would be preempted and therefore determined on the administrative record rather than at trial. The failure to develop the administrative record more fully is, at best, a glaring error in judgment.

claims examiner. It argues that plaintiff's damages do not meet the Certificate's definition of "injury;" that the accident was "self-inflicted;" and that it arose from operation of a "motorcycle, mini-bike, or motor bike while not wearing a helmet" – any of which is grounds for exclusion of the claim under the Policy. I make no findings or ruling as to these arguments.

## IV. Conclusion

Defendant's Motion for Summary Judgment is granted. The clerk of the court is directed to close this case.

This constitutes the decision and order of the Court.

November 29, 2005

*[signature]*

U.S.D.J.